UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| KAREN BRAKE, | CIV 12-4217 |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |
| THE HUTCHINSON TECHNOLOGY INCORPORATED GROUP DISABILITY INCOME INSURANCE PLAN, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Karen Brake, brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, (ERISA) after the Defendant Hutchinson Technology Incorporated Group Disability Income Insurance Plan denied Plaintiff ERISA long term disability benefits under a Buy-Up supplemental plan. Doc.1. Both parties have moved for summary judgment. Doc. 14, 18.

*Rule 56*

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact[1] and the movant is entitled to judgment as a matter of law." "Where the unresolved issues are primarily legal, rather than factual, summary judgment is particularly appropriate." *Jankovitz v. Des Moines Indep. Cmty. Sch. Dist.*, 421 F.3d 649, 652-653 (8th Cir. 2001). A district court, when faced with cross-motions for summary judgment, must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

---

[1] In this case Plaintiff responded to only twenty of Defendant's sixty statements of material fact. D.S.D. LR 56.1 D provides: "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts."

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Karen Brake began working for Hutchinson Technology Incorporated at its Sioux Falls, South Dakota location in August of 1988. From September 1994 through the termination of her employment she was a manufacturing training/CM supervisor. Hutchinson Technology purchased a group long-term disability insurance policy (No. 83109052) (the "Policy") originally from CNA Group Life Assurance Company. CNA Group Life Assurance Company later changed its name to Hartford Life Group Insurance Company. The Policy became effective April 1, 2005.

The Policy's plan administrator was Hutchinson Technology. Hutchinson Technology delegated its sole discretionary authority to Hartford to determine questions of benefit eligibility and entitlement and to interpret the terms, and provisions of the Plan and any policy issued in connection with the Plan. The Plan offered both a "Core Plan" and "Buy-Up Plan" long-term disability monthly benefit options. Under the Hartford Core Plan, the basic monthly benefit amount payable to a qualifying beneficiary was either fifty percent of an employee's monthly earnings, or $7,000, whichever amount was less. Hutchinson Technology paid the entire cost of coverage under the Core Plan.

Under the Hartford Buy-Up Plan, the basic monthly benefit amount payable to a qualifying beneficiary was either seventy percent of an employee's monthly earnings, or $10,000, whichever was less. The employee paid the cost of coverage for the additional benefit amount, that being the amount in excess of Hutchinson Technology's contribution under the Core Plan.

In March 2007, during Hutchinson Technology's employee benefit open enrollment period, Plaintiff submitted a benefit enrollment form exercising her option to pay for the additional coverage and participate in the Buy-Up long term disability plan. Plaintiff was covered under the Core Plan before April 1, 2007, and effective April 1, 2007, she participated in and was covered under the Buy-Up Plan.

Plaintiff was diagnosed with multiple sclerosis (MS) in approximately 2000. In a telephone interview with a Hartford representative, Plaintiff claimed to have begun experiencing heightened problems associated with her multiple sclerosis in April 2007. Plaintiff's application for long term disability benefits lists a diagnosis of MS with symptoms of fatigue, pain, bladder spasm and visual changes.

According to the Plan file Plaintiff went to part-time employment with Hutchinson Technology in July of 2007, and from July 25, 2007, onward, Plaintiff utilized short-term disability pay and worked adjusted hours but was not changed to a part-time status.(HART000048). On March 25, 2008, Plaintiff stopped working at Hutchinson Technology entirely. Plaintiff's short-term disability benefits expired July 3, 2008. Plaintiff submitted a claim to Hartford for long-term disability benefits in an application dated April 24, 2008. Plaintiff's attending physician, Dr. Olson, listed 9/10/2007 as the date Plaintiff became unable to work due to her impairment. Plaintiff has been paid all core long-term disability benefits.

The Hartford Group Policy addresses "Buy-Up Plan Pre-Existing Condition" as follows:

> The portion of the Buy-Up Plan that exceeds the coverage available under the Core Plan will not apply to any Disability caused by a condition for which medical treatment or advice was rendered, prescribed or recommended within 12 months prior to the effective date of the Buy-Up Plan. A condition shall no longer be considered pre-existing for loss incurred or Disability commencing after the Buy-Up Plan has been in force for a period of 12 months.

On August 19, 2008, Hartford corresponded to Plaintiff and advised her that it had approved her claim for Long-Term Disability benefits under the Core Plan, but that benefits were not payable for the Buy-Up Plan because her disability was due to a Pre-Existing condition and that her medical records indicated that she received treatment for her MS condition during the pre-existing period. Hartford explained that its review disclosed treatment on 3/15/2006, 6/29/2006, 3/7/2007 and an MRI on 3/09/2007, all occurring during the pre-existing period.

Plaintiff contacted the Plan officials on September 30, 2008. In this correspondence she advised that her doctor's visit on June 29, 2006, was for a routine physical and pap smear with her family doctor. Plaintiff also explained that since she was diagnosed with MS in 2000, she was regularly seen by a neurologist every year as a routine well-care checkup and felt that she should not be penalized by trying to manage her condition and maintain a healthy life.

In correspondence dated October 20, 2008, the Appeal Specialist for Hartford Life and Accident Insurance Company explained the denial of buy up plan long-term disability benefits as follows:

> Since your date of loss was within 12 months of the effective date of the Buy Up

coverage a pre-existing investigation was completed. It is noted that during the pre-existing time frame which was from April 1, 2006 through March 31, 2007, you were treated for your MS condition.

On June 29, 2006, you were seen by Dr. Michael Olson for a pap and pelvic exam. However during the examination you advised Dr. Olson that your biggest concern is fatigue. You further stated that you thought the fatigue was related to your MS. On March 7, 2007, you were seen by Dr. Eugene Matos with complaints of fatigue and numbness in the legs and knees. You also reported vision changes and other problems related to MS. An MRI of the brain was recommended and completed on March 9, 2007.

All of the above visits occurred during the pre-existing time period and therefore renders you ineligible for benefits under the exclusion noted in the policy.

In rendering the appeal decision we considered your letter of appeal dated September 30, 2008. Although we understand that you had to do what was needed in order to maintain a healthy life, we still must follow the guidelines within the policy.

The October 20, 2008 letter quoted from the Policy's Buy-Up plan pre-existing condition provision and advised Plaintiff of her right to access to and copies of all documents free of charge. The October 20, 2008 letter also advised Plaintiff of her right to bring a civil action.

On May 15, 2009, counsel other than what is now representing Plaintiff, wrote Hartford and contended that the routine exam by Dr. Olson on June 29, 2006, had nothing to do with Plaintiff's MS and that Plaintiff's visit with Dr. Matos on March 7, 2007, and MRI exam on March 9, 2007,[2] were merely part of her routine, periodic check-ups, and were not occasioned by any sort of episode requiring or resulting in medical treatment for purposes of the pre-existing conditions clause.

### WHAT STANDARD OF REVIEW APPLIES?

A plan beneficiary may bring a civil action to obtain judicial review of a benefits determination under ERISA 29 U.S.C. § 1132(a)(1)(B). Where, as in the case at hand, the language of an ERISA plan provides the administrator discretionary power to interpret the terms of the Plan or make eligibility determinations, the administrator's decisions are reviewed for an abuse of discretion.

---

[2]The Court notes that the finding of the March 9, 2007 MRI basically show no changes from the prior study of March 16, 2006, and the radiologist states in the 2007 report, "There is no evidence of progression of disease."

4

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 998–99 (8th Cir.2005) (en banc). "This highly deferential standard reflects the fact that courts are hesitant to interfere with the administration of [an ERISA] plan. *"Cox v. Mid-Am. Dairymen, Inc.*, 13 F.3d 272, 274 (8th Cir.1993) (internal marks omitted). Under this abuse of discretion standard, an administrator's decision "will not be disturbed if reasonable." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 111. Although deference is accorded to an administrator under the abuse of discretion standard, "an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator."
*King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d at 1000. The Eighth Circuit measures "reasonableness by whether substantial evidence exists to support the decision, 'meaning more than a scintilla but less than a preponderance.'" *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir.2008) (internal quotation omitted).

In determining whether a plan administrator abused its discretion, a court must consider the inherent conflict of interest that arises when a plan administrator acts as both the payer of benefits and the decision-maker in a claim determination, as in the case at hand. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). This conflict of interest, however, does not change the standard of review, and should be weighed only as a factor in determining whether the administrator abused its discretion. *Id.* at 115–17. A conflict of interest should be given greater weight "where circumstances suggest a higher likelihood that it affected the benefits decision." *Id.* at 117.

Plaintiff contends that review is de novo even if a Plan reserves discretion and delegates that discretion to an insurer, if a state law regulating insurance does not permit the exercise of discretion. In support of this proposition Plaintiff cites *Standard Insurance Co. v. Morrison*, 584 F.3d 837, 844-5 (9th Cir. 2009), *cert. denied*, 130 S.Ct. 3275 (2010) (practice of disapproving discretionary clauses by state Commissioner of Insurance was not preempted by ERISA's exclusive remedial scheme), and *American Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009) (rules prohibiting insurers from marketing products containing discretionary clauses upheld). Plaintiff then presents the affidavit of Randy Moses in her reply brief. This affidavit quotes ARSD 20:06:52:02 (35

SDR 48, effective September 8, 2008) which provides:

> A discretionary clause is not permitted in any individual or group health policy. No policy offered or issued in this state by a health carrier or plan to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services may contain a discretionary clause or similar provision purporting to reserve discretion to the health carrier or plan to interpret the terms of the policy or to provide standards of interpretation or review that are inconsistent with the laws of this state. The provisions of this rule apply to any health insurance policy issued or renewed after June 30, 2008.
>
> Nothing in this section limits the director's authority under SDCL 58-11-19 to 58-11-21, inclusive, to disapprove or withdraw approval of any policy that contains a discretionary clause or to otherwise disapprove any practice involving a discretionary clause.

The employer, Hutchinson Technology Inc., is a Minnesota corporation and the policy states that it is "effective in the State of Minnesota and governed by the laws thereof." Assuming that state law is not preempted, it is a group policyholder's residence, not the residence of an individual certificate holder, that determines which state law applies, *See Hamilton v. Standard Ins. Co.*, 516 F.3d 1069, 1073 (8th Cir. 2008). Plaintiff states without citing to any authority, "The policy is to be governed by its language under the state laws of Minnesota but, as to its 'contacts' with South Dakota, is subject to our insurance laws and public policies." Doc. 19, p.8 n.2. Plaintiff lived and worked in South Dakota at all relevant times. Plaintiff individually elected to purchase the Buy-Up Plan and then paid for the Buy-Up Plan in South Dakota. The Buy-Up Plan was issued in Minnesota but it was delivered in South Dakota. The Minnesota choice of laws provision in the Core Plan and the Buy-Up Plan remains in effect, with the exception being that since this Buy-Up Plan was delivered in South Dakota, any conflicting South Dakota law requirement is applicable to change the conflicting policy provision because the policy provides:

> If any provision of the Policy conflicts with the statutes of the state in which the Policy was issued or delivered, it is automatically changed to meet the minimum requirements of the statute.

Plaintiff also claims that pursuant to ARSD 20:06:52:01(3) (35 SDR 48, effective September 8, 2008) this review should be de novo. The effective date of the rule applies to health

insurance policies issued or renewed after June 30, 2008. This Buy-Up Plan was issued to Karen Brake prior to that date so the review is a discretionary review, not de novo.

The Plan in this case delegates sole discretionary authority to Hartford to determine eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it. The initial and final decisions from Hartford were rendered after *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), was decided. Given the clear language of the Plan, the Court is obligated to apply the abuse of discretion standard of review, but the conflict of interest will be weighed as a factor in determining whether the administrator abused its discretion in denying Plaintiff's Buy-Up Plan long-term disability benefits.

## I.
## WHETHER THIS COURT OR THE PLAN ADMINISTRATOR MUST CONSIDER THE EVIDENCE PLAINTIFF SUBMITTED BY AFFIDAVITS TO SUPPLEMENT THE ADMINISTRATIVE RECORD?

In support of her motion for summary judgment and in opposing Defendant's motion for summary judgment, Plaintiff Karen Brake has filed two affidavits that supplement the administrative record of the Plan. Plaintiff submitted an affidavit which presented allegations not relied upon by the Plan administrator in its denial of Plaintiff's Buy-Up Plan benefits. Doc. 21. Plaintiff's affidavit states in paragraph #5:

> 5. Affiant continued to work gainfully at her occupation throughout 2007 and well into 2008 (contrary to the non-evidence-based assertions by the Plan of an earlier "termination" date). Affiant, for example, worked full 40-hour weeks continuously from September 18, 2007 through December 14, 2007;

Plaintiff's affidavit states in paragraph #8 that it was never determined that she was unable to earn 80% of her monthly income under the earnings qualifier.

As an attachment to her Response to Defendants' motion for summary judgment (Doc. 27), Plaintiff submitted the Affidavit of Randy Moses, the Deputy Director for the South Dakota Division of Insurance. In his affidavit Randy Moses states that "the term 'Health Insurance' includes, but not by way of limitation, 'Disability' insurance; further, that the Division regularly regulates and oversees disability insurance policies." Randy Moses also states in his affidavit that the "companies and

7

producers licensed in South Dakota who write disability insurance do so under the 'Health' line of authority since at least 1983."

Defendant argues that since the affidavit evidence was not before the Plan administrator at the time of its decision, this Court cannot consider this evidence on its abuse of discretion review. In an ERISA case, where benefits have been denied, a district court may consider evidence that is not in the administrative record "if the plaintiff shows good cause" for its omission. *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir.1998). Plaintiff, however, offers no reason for not presenting the affidavit evidence or argument at the administrative level. Even if a district court does not in the first instance consider evidence outside the administrative record, a district court may under certain circumstances remand a case back to the plan administrator and allow it to conduct an initial review and evaluation of the additional evidence. *See, e.g., Willcox v. Liberty Life Assur. Co. of Boston*, 552 F.3d 693, 698 (8th Cir. 2009).

Plaintiff argues that The Plan incorrectly determined that July 25, 2007, was her last date of full time work.[3] Relying upon her affidavit, Plaintiff asserts that although she began to take time under the Family and Medical Leave Act and some short-term disability hours beginning on July 25, 2007, she did, however, go back to full-time work between September 18, 2007 through December 14, 2007. On her application for long-term disability income benefits, Plaintiff, herself, lists July 26, 2007, as the last day she worked before the disability. Even if the Court were to consider the conflicting extra-record evidence Plaintiff presents in her affidavit regarding her return to full-time work between September and December 2007, this evidence does not show that Plaintiff's disability commenced more than one year after her effective date of coverage under the Buy-Up Plan. Further, a remand in this case to allow the plan administrator to consider the material set forth in the affidavits would not impact the plan administrator's decision to deny the Buy-Up Plan long-term disability benefits.

---

[3] Plaintiff, in her complaint in this action, cites July 4, 2008, as the date of when she was disabled. This is when Plaintiff began receiving her Core Plan long-term disability benefits.

# II.
# WHETHER HARTFORD'S NOTICE PROVIDED ADEQUATE NOTICE FOR THE DENIAL OF PLAINTIFF'S BUY-UP PLAN LONG-TERM DISABILITY BENEFITS?

Plaintiff argues in her summary judgment memorandum: "To merely state the ground for denial and that the Plaintiff's evidence does not 'clinically support' Plaintiff's contention, falls short of a reasoned decision since such a decision must set forth 'an explanation of the scientific or clinical judgment applying the terms of the plan to the claimant's medical circumstances.'" Doc. 19, p.4. Under ERISA an employee benefit plan must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C.A. § 1133.

The Eighth Circuit has interpreted the above statue and accompanying regulations "to require ... a written opinion that includes specific reasons for the decision. Bare-faced conclusions do not satisfy this requirement." *Richardson v. Central States, Southeast and Southwest Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir. 1981). The notice of denial in this case, by quoting the Buy-Up Plan Pre-Existing Condition policy provision and referencing Plaintiff's specific dates of treatment, clearly sets forth specific reasons for its denial and does not merely present bard-faced conclusions.

Plaintiff argues that the Administrative Record does not contain evidence that Plaintiff was unable to maintain work in her occupation so as to satisfy the "earnings qualifier," and that a determination of the date of disability commencement under the "earnings qualifier" approach of considering when an employee is unable to earn 80% of her monthly earnings is required to adjudicate this case on its merits. The Hartford policy in this case states: "Disability or Disabled means that You satisfy the Occupation Qualifier *or* the Earnings Qualifier as defined below."(emphasis added). Under the Occupation Qualifier portion of the policy, disability for Class 1 workers, which included Plaintiff, is defined as injury or sickness causing "physical or mental impairment to such a degree of severity that You are: 1) continuously unable to perform the Material and Substantial Duties of Your Regular

9

Occupation; and 2) not Gainfully Employed. The Plan is allowed to determine disability under the Occupation Qualifier method. Since Plaintiff stopped working at Hutchinson Technology entirely on March 25, 2008, and there is significant evidence that she was disabled before that date, she was clearly disabled under the Occupation Qualifier within a year of the effective date of the Buy-Up Plan and the Plan Administrator was not required to determine disability under the Earnings Qualifier.

## III.
## WHETHER PLAINTIFF IS ENTITLED TO THE BUY-UP PLAN LONG-TERM DISABILITY BENEFITS UNDER S.D.C.L § 58-17-97 AND THE TERMS OF THE PLAN?

*S.D.C.L. § 58-17-97*

    S.D.C.L. § 58-17-97 provides in relevant part::

    Any accident and sickness policy or certificate subject to the provisions of this chapter, other than credit health insurance as defined in subdivision 58-19-2(1) and a health benefit plan as defined in § 58-17-66, shall comply with the following provisions:

    (1) No policy or certificate may deny, exclude, or limit benefits for a covered individual for claims incurred more than twelve months following the effective date of the person's coverage due to a preexisting condition;

    (2) No policy or certificate may define a preexisting condition more restrictively than:

        (a) A condition that would have caused an ordinarily prudent person to seek medical advice, diagnosis, care, or treatment during the twelve months immediately preceding the effective date of coverage;

        (b) A condition for which medical advice, diagnosis, care, or treatment was recommended or received during the twelve months immediately preceding the effective date of coverage;

    . . . .

    Plaintiff argues that since the Plan in this case is an "insured" ERISA plan, as opposed to a "self-funded" ERISA plan, it may be regulated by state insurance laws under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq. See FMC Corp. v Holliday*, 498 U.S. 52, 61 (1990). Plaintiff further

argues that S.D.C.L. § 58-17-97 may be deemed a "law which regulates insurance," and is then saved from preemption under ERISA, since the statute is specifically directed toward entities engaged in insurance and the statute substantially affects risk pooling arrangement between the insurer and the insured. *See Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003). The issue, however, is not whether ERISA preempts state law, but whether South Dakota law, rather than Minnesota law, applies. The Court has held that the law of Minnesota applies subject to the qualification of where the policy conflicts with South Dakota law due to the fact that the Buy-Up Plan was delivered in South Dakota. SDCL 58-17-97 is not applied in this case because that South Dakota statute does not conflict with the applicable policy provisions. The Plaintiff would not recover even if SDCL 58-17-97 was applicable.

*The Plan*

Plaintiff contends that although Plaintiff's disability arose out of a pre-existing condition, she is not excluded from Buy-Up Plan long-term disability coverage under the terms of the Plan. Plaintiff argues that as a long-term employee of Hutchinson Technology, she was vested in all her rights under the Long-Term-Disability Plan, and was "grandfathered in" to her full rights. In making this argument Plaintiff cites to the following language of the Hartford policy: "You will receive credit toward satisfaction of the Pre-existing Condition time periods under the Policy for the time You were covered under the Prior Policy." This provision of the policy deals with providing plan participants credit for time spent satisfying a similar pre-existing condition limitation under a "prior policy." The Hartford Buy-Up long-term disability plan, however, did not replace a prior policy for which Plaintiff was insured, and this provision does not apply to the facts of this case.

Defendant maintains that once a disability from a preexisting condition materializes within a year of the effective date of the Buy-Up long-term disability plan, coverage for the disability is thereafter barred. Plaintiff argued in her initial brief that the second sentence of the definition of pre-existing condition under the Buy-Up Plan is inconsistent with such an absolute prohibition. That sentence provides: "A condition shall no longer be considered pre-existing for loss incurred or Disability commencing after the Buy-Up Plan has been in force for a period of 12 months." In her reply brief (Doc. 30), Plaintiff modifies her argument slightly, relies upon *Benesowitz v. Metropolitan Life Ins. Co.*, 870 N.E.2d 1136, 839 N.Y.S.2d 706, 8 N.Y.3d 661 (NY App. 2007), and asserts that

11

when the policy conforms to our state law, the pre-existing clause is altered to permit, at most, a one-year tolling period during which benefits would not be payable.

In *Benesowitz* the United States Court of Appeals for the Second Circuit certified to the Court of Appeals of New York a question regarding a New York statute governing preexisting condition provisions in group disability insurance policies. An employee was treated for kidney disease three months before he was covered under his employer's short- and long-term group disability insurance plans, which were administered by the defendant Insurance Company. After the employee in *Benesowitz* became unable to work approximately six months after he was covered by the plan, the Insurance Company denied the employee's application for long-term disability based on the following exclusion in the plan:

> Benefits will not be paid for any period of Disability caused or contributed to by, or resulting from, a Pre-[E]xisting Condition. A 'Pre–Existing Condition' means any Injury or Sickness for which you incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a Physician within three months before the most recent effective date of your coverage.
>
> The Pre–Existing Condition limitation will apply to any added benefits or increases in benefits. This limitation will not apply to a period of Disability that begins after you are covered for at least 12 months after the most recent effective date of your coverage, or the effective date of any added or increased benefits.

*Benesowitz*, 8 N.Y. 3d at 665, 870 N.E.2d at 1138. The New York statute in issue, Insurance Law § 3234 provided in relevant part:

> "(2) No pre-existing condition provision shall exclude coverage for a period in excess of twelve months following the effective date of coverage for the covered person.

*Benesowitz*, 8 N.Y.3d at 666-667, 870 N.E.2d at 1139. The Court of Appeals of New York interpreted Section 3234(a)(2) as allowing insurers to impose a tolling period rather than an absolute bar to benefits.[4] *Benesowitz*, 8 N.Y. 3d at 710, 870 N.E.2d at 1140.

---

[4]The Court of Appeals of New York observed that section 3234(a)(2) does not prevent insurers from excluding or limiting disability coverage based on an individual's prior medical history by using individual underwriting procedures in determining a person's eligibility for coverage under a group disability policy. *Benesowitz*, 8 N.Y. 3d at 710, 870 N.E.2d at 1140.

12

The *Benesowitz* case offers limited support to Plaintiff's position since its holding is based on the New York statute, not policy language, and the Court has held that the comparable South Dakota statute, S.D.C.L. § 58-17-97, does not provide benefits. In any event, the language in S.D.C.L. 58-17-97 is different than the New York statute. The statutory language in the *Benesowitz* case is not the same as and is functionally different than the policy language in the case at hand which states: "A condition shall no longer be considered pre-existing for loss incurred or Disability commencing after the Buy-Up Plan has been in force for a period of 12 months." A creative construction of that policy language could support a determination that the policy imposes a one-year tolling period instead of a complete bar to Buy-Up long-term disability coverage. That is not, however, how the Court construes that policy language. The interpretation of the Plan language by the plan administrator was not contrary to the clear language of the Plan.

When an ERISA plan grants the plan administrator the discretion to determine whether a claimant is eligible for benefits, as it does in the case at hand, review of the administrator's decision is for an abuse of discretion. *See Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1258 (8th Cir. 2012). In reviewing a plan administrator's interpretation of its plan language, a court generally examines the following factors: (1) whether the interpretation is consistent with the goals of the plan; (2) whether it renders any language in the plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of ERISA; (4) whether the plan administrator has interpreted the provisions at issue consistently; and (5) whether the interpretation is contrary to the clear language of the plan. *McClelland v. Life Ins. Co. of North America*, 679 F.3d 755, 759 (8th Cir.2012) (citing *Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617, 621 (8th Cir.1992)).

Hartford determined that the buy-up plan pre-existing condition limitation barred Plaintiff's claim for buy-up plan benefits because (1) Plaintiff received medical treatment or advice for multiple sclerosis within the twelve months preceding her April 1, 2007 effective date of coverage under the Buy-Up long-term disability plan; and (2) Plaintiff's disability commenced in July 2007 – well before the Buy-Up Plan had been in force for twelve months. Plaintiff does not dispute the first consideration. Defendant rejects Plaintiff's one-year tolling period interpretation as a contradiction of the plain meaning of the Buy-Up Plan pre-existing condition exclusion, and as an interpretation that would turn the pre-existing condition limitation into little more than an extension of the Plan's

13

elimination period. The Court, after considering the five factors listed above, concludes that Defendant's interpretation of the plan language is valid.

The Court has considered the inherent conflict of interest that exists in a case such as this where the plan administrator is an insurance company. Plaintiff has not set forth any circumstances, however, that demonstrate that the conflict impacted the decision in this case. The Court does not find that the plan administrator in this case abused its discretion in denying Plaintiff benefits under the Buy-Up long-term disability plan. Accordingly,

**IT IS ORDERED**:

1. That Defendant's motion for summary judgment (Doc. 14) is granted; and
2. That Plaintiff's motion for summary judgment (Doc. 18) is denied.

Dated this 9th day of October, 2013.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summer Wahupel
Deputy